UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

STEPHEN JOHNSON,

        Plaintiff,

        v.                          Case No. 03-C-0775

CITY OF MILWAUKEE,
OFFICER JOHNSON,
OFFICER JONES,

        Defendants.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Stephen Johnson (Mr. Johnson) sues the City of Milwaukee and two of the City's police officers, alleging violations of his civil rights. Pending before the court is the defendants' motion for summary judgment.

PRO SE WARNINGS

In an order of October 11, 2005, this court denied a previous defense motion for summary judgment because defendants failed to provide Mr. Johnson with adequate warnings under Civil L.R. 56.1 and 56.2. In particular, defendants had not quoted Civil L.R. 56.1 or 56.2 for Mr. Johnson. The court noted that Civil L.R. 56.2 was especially important, because it would have warned Mr. Johnson about the consequences of a failure to respond to defendants' proposed findings of fact or to propose his own findings of fact.

In their renewed motion, defendants do quote Civil L.R. 56.1 and 56.2. However, they quote outdated versions of those rules; these rules were amended over three years ago, on April 7, 2003. The difference is an issue in this case, as the version quoted by

defendants states that cases in which a party appears pro se are excepted from the rule requiring proposed findings of fact. (Am. Mot. for Summ. J. at 2.) This amendment of the local rules was even noted for defense counsel in footnote 1 of the court's October 11, 2005, order.

In at least one other case, another City attorney has used outdated local rules regarding the pro se litigant warnings. *See Hoskins v. City of Milwaukee*, No. 03-C-334, slip op. at 3-4 & n.1 (filed 9/27/05). Perhaps boilerplate language in the City Attorney's Office's computer was not updated, or defense counsel's office has not kept up to date with maintaining its library regarding this court's local rules. Whatever the reason for the continued use of the outdated version of Civil L.R. 56.1 and 56.2, counsel for defendants is directed to correct the versions of Civil L.R. 56.1 and 56.2 used in this court and to notify other City attorneys regarding the need to use the present versions of Civil L.R. 56.1 and 56.2. Copies of those rules are available on the court's website or from the clerk's office.

For purposes of the pending summary judgment motion, the misquote does not require denial of relief. Counsel substantially complied with the court's October 10, 2005, order. The quote of Civil L.R. 56.2 was correct but for the one phrase excepting pro se cases, and the court's October 10, 2005, order informed Mr. Johnson that the requirements of Civil L.R. 56.2 apply to his case. Mr. Johnson was advised that in deciding a motion for summary judgment, the court must conclude that there is no genuine material issue as to any proposed finding of fact to which no response is made, citing Civil L.R. 56.2(e). Moreover, the court noted how Mr. Johnson had failed to respond to defendants' proposed findings of fact regarding the first motion for summary judgment and the importance of such responses.

2

(Order of 10/11/05 at 1-2.)  And the court noted how the local rules had changed on April 7, 2003, to include proposed findings of fact in pro se cases.  (*Id.* at 2 n.1.)

Moreover, Mr. Johnson appears to have heeded the court's warning.  His response brief contains a fact section addressing defendants' proposed findings of fact. (Pl.'s Resp. Br. at 1-3.)  Where no prejudice has occurred to the plaintiff based on inadequate warnings regarding summary judgment procedures, the failure to give proper warnings may be excused.  *Cf. Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994).  Therefore, the court will consider the summary judgment motion on its merits.

## SUMMARY JUDGMENT

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party has the initial burden of demonstrating that it is entitled to summary judgment.  *Id.* at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend each element of his cause of action, showing that there is a genuine issue for trial. *Id*. at 322-24.  In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The mere existence of some factual dispute does not defeat a summary judgment motion; there must be a genuine issue of material fact for the case to survive.  *Id.* at 247-48.  "Material" means that the factual dispute must be outcome-determinative under governing law.  *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997).  Failure

3

to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. Therefore, summary judgment is appropriate against a party who fails to establish the existence of an element essential to that party's case. *Id.* at 322. To establish that a question of fact is "genuine," the opposing party must present specific and sufficient evidence that, if believed by a jury, would actually support a verdict in her favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## UNDISPUTED FACTS

Unless otherwise noted, the following facts are undisputed, as defendants have provided proposed findings of fact with supporting evidence and Mr. Johnson has neither disputed these particular facts nor presented contrary evidence. Mr. Johnson filed an affidavit in opposition to the motion for summary judgment, but several of his statements must be disregarded. Affidavits must be made on personal knowledge. Fed. R. Civ. P. 56(e). Mr. Johnson avers such things as: "As to the defendants['] claim that defendant Johnson determined that the plaintiff had an outstanding warrant in Illinois, this is a false statement because defendant Johnson in fact did not make that determination." (Pl.'s Br. in Opp'n Ex. A ("Pl.'s Aff.") ¶ 1.) Similarly, he swears that "[t]he defendant[s] have never attempted to locate the plaintiff" and that "[t]he defendants never at anytime received radio information from anyone accusing the plaintiff of committing a crime." (*Id.* ¶¶ 3, 10.) Mr. Johnson has not demonstrated that he has personal knowledge regarding Officer Johnson's determination regarding the outstanding warrant, Officer Johnson's and Jones' receipt of a radio communication, or the defendants' prior attempts to locate Mr. Johnson without success.

4

Further, a plaintiff's mere repetition under oath of the same general allegations contained in the complaint is not enough to convert the claims into evidence sufficient to survive summary judgment. *See Wudtke v. Davel*, 128 F.3d 1057, 1061 (7th Cir. 1997) ("The mere fact that they repeated their speculations under oath is not enough to convert their suppositions into competent evidence.").

Other statements by Mr. Johnson are immaterial to the outcome of this case. For instance, whether Mr. Johnson has ever been placed on ROPE status, whether his parole agent knew where he lived or worked, and whether the defendant officers left information with Mr. Johnson's girlfriend prior to his arrest have no bearing on the issues for decision. Therefore, any averments by Mr. Johnson which are not based on personal knowledge or immaterial to the issues for decision are not evidence and have been left out of the following statement of facts.

On July 24, 2003, Officer Lemuel Johnson (Officer Johnson) and Officer Andrew Jones were employed as police officers with the City of Milwaukee Police Department, and were assigned to its warrant squad. (Defs.' Br. in Supp. at 4, Proposed Finding of Fact (DPFOF) ¶ 1[1]; Defs.' Br. in Supp. Ex. A (Jones Aff.) ¶ 1; Defs.' Br. in Supp. Ex. B (Officer Johnson Aff.) ¶ 1.) The two officers were working with an agent assigned to the "ROPE unit" of the State of Wisconsin, Department of Probation and Parole. (DPFOF ¶ 1; Jones Aff. ¶ 1; Officer Johnson Aff. ¶ 1.) Either on or a few days prior to July 29, 2003, Officer Johnson determined, by conducting a "wanted check" using the NCIC (i.e., National Crime Index

---

[1] Defendants' proposed findings of fact are found on pages 2 to 7 of their brief in support of their summary judgment motion. Hereafter, the court will cite to the proposed findings by paragraph number rather than by page of the brief. The paragraphs are numbered separately within the headings of "The Events" and "Applicable MPD Policies," but only four paragraphs are set forth under the policies section. Thus, unless otherwise noted, the paragraph number referenced is that set forth under the heading of "The Events."

5

Computer) system, that Mr. Johnson had an outstanding warrant for arrest in the State of Illinois, relating to a felony-forgery charge. (DPFOF ¶ 2; Officer Johnson Aff. ¶ 2.) Officer Johnson then informed Jones of Mr. Johnson's outstanding warrant. (Jones Aff. ¶ 2.)

As part of their job responsibilities with the Milwaukee Police Department and with the ROPE unit, Jones and Officer Johnson, along with Mr. Johnson's probation and parole agent, attempted to contact Mr. Johnson to take him into custody relative to the warrant, but were initially unable to contact Mr. Johnson. (DPFOF ¶¶ 3, 4; Jones Aff. ¶¶ 3, 4; Officer Johnson Aff. ¶¶ 3-4.)

On July 29, 2003, based on information they had received indicating Mr. Johnson was at home, Officer Johnson and Jones went to Mr. Johnson's residence at 8711A W. Mill Road, Apartment 8, in the City of Milwaukee. (DPFOF ¶¶ 6, 7, 12; Jones Aff. ¶¶ 6, 7, 12; Officer Johnson Aff. ¶¶ 7, 12.) Via cell phone, Jones contacted another squad car, which was assigned to the district covering Mr. Johnson's residence, and asked that the officers in that squad respond to Mr. Johnson's residence for surveillance purposes until Jones and Officer Johnson could get there. (DPFOF ¶¶ 8-11; Jones Aff. ¶¶ 8-11.) Because Jones used his cell phone, no "dispatch" records were generated as a result, as the call was not processed by a dispatcher. (DPFOF ¶ 10; Jones Aff. ¶ 10.)

When Jones and Officer Johnson arrived at Mr. Johnson's residence, they made personal contact with Mr. Johnson, handcuffed him, and took him into custody without event. (DPFOF ¶ 12, 13; Jones Aff. ¶¶ 12, 13; Officer Johnson Aff. ¶¶ 12, 13.) The officers also searched Mr. Johnson's residence. (Pl.'s Br. in Opp'n at 1-3 ("Pl.'s Stmt. of Facts"), ¶¶ 5, 8; Pl.'s Aff. ¶¶ 5, 8.) The officers never showed Mr. Johnson a warrant for his arrest or for a search of his residence. (Pl.'s Stmt. of Facts ¶ 6; Pl.'s Aff. ¶ 6.) The officers escorted Mr.

Johnson to their squad car and seated Mr. Johnson in the back seat. (DPFOF ¶ 14; Jones Aff. ¶ 14; Officer Johnson Aff. ¶ 14.)

Pursuant to standard Milwaukee Police Department procedure, the officers attempted to confirm the existence of the warrant using their squad car's computer; however, upon checking their computer system for the warrant, the officers could not find it. (DPFOF ¶¶ 15, 16; Jones Aff. ¶¶ 15, 16; Officer Johnson Aff. ¶¶ 15, 16.) Therefore, the officers contacted police personnel at other district stations to obtain assistance in confirming the warrant; however, no one contacted could confirm the warrant's existence. (DPFOF ¶¶ 17, 18; Jones Aff. ¶ 17, 18; Officer Johnson Aff. ¶¶ 17, 18.)

The officers determined that without on-scene confirmation of the existence of the warrant, they would violate Milwaukee Police Department rules if they kept Mr. Johnson in custody. (DPFOF ¶ 19; Jones Aff. ¶ 19; Officer Johnson Aff. ¶ 19.) Jones apologized to Mr. Johnson for detaining him and released him. Mr. Johnson was held for five hours. (Pl.'s Stmt. of Facts ¶ 8; Pl.'s Aff. ¶ 8.[2])

Mr. Johnson did have an outstanding Illinois warrant for arrest on a 1989 forgery charge under the name Steven Johnson. (Officer Jones Aff. App. at AJ24.) Officers Johnson and Jones subsequently confirmed its existence. (DPFOF ¶ 23; Jones Aff. ¶ 23; Officer Johnson Aff. ¶ 23.) The officers believe that because the warrant was issued by an out-of-state jurisdiction and because of differences in Mr. Johnson's name or date of birth, the warrant was not easily recognizable in the computer information displayed in the squad car. (DPFOF ¶ 24; Jones Aff. ¶ 24; Officer Johnson Aff. ¶ 24.) Currently, Mr. Johnson is

---

[2] Jones and Officer Johnson aver that Mr. Johnson was held only ten or fifteen minutes. (Jones Aff. ¶ 22; Officer Johnson Aff. ¶ 22.) For summary judgment purposes, the court must take the facts in Mr. Johnson's favor.

7

incarcerated, and extradition proceedings are pending relative to the Illinois warrant. (DPFOF ¶ 26; Jones Aff. ¶ 26, App. at AJ1-AJ25.)

DISCUSSION

Mr. Johnson alleges that (1) the officers arrested and detained him without a warrant or probable cause, (2) the City failed to adequately train the officers, and (3) the City unlawfully withheld documents from him.[3] In his brief opposing summary judgment, he argues that he has an additional claim arising from the officers' search of his home without a warrant or probable cause. Whether that claim was pled sufficiently or supported is addressed below.

A. Unlawful Arrest Claim

An officer may legally arrest a suspect either with an warrant or where the officer has probable cause to believe the suspect has committed a crime. *See United States v. Sawyer*, 224 F.3d 675, 678 (7th Cir. 2000). Mr. Johnson asserts that the defendant officers lacked a warrant or probable cause to arrest him, but he has failed to support his assertion with any evidence. Instead, the undisputed evidence shows that a warrant for Mr. Johnson's arrest did exist (*see* Jones Aff. App. at AJ24) and that Officer Johnson had determined that an Illinois warrant for Mr. Johnson's arrest respecting a felony-forgery charge existed before

---

[3]Mr. Johnson filed an initial complaint and then two amendments. The amendments did not restate all claims; instead, each added a separate new claim to those in the original complaint. Per Civil L.R. 15.1, any amendment to a pleading must reproduce the entire pleading rather than merely tack new claims on to a prior pleading. So in an order of November 3, 2003, the court directed Mr. Johnson to refile a new amended complaint incorporating all of his claims for relief.

Apparently, Mr. Johnson misunderstood the order, as he refiled, on November 6, 2003, an amended complaint containing only the two claims in his prior amendments, without any of the factual allegations of the original complaint. However, defendants answered both the original complaint and the November 6, 2003, amended complaint. Further, Mr. Johnson's intent to include all claims from the original complaint and the November 6, 2003, amended complaint became clear in "Plaintiff's Reply to Answer," which he filed on February 17, 2004.

Because Mr. Johnson proceeds pro se and the defendants understood Mr. Johnson's intent and proceeded accordingly, the court will overlook Mr. Johnson's failure to abide by Civil L.R. 15.1 and will consider the claims presently pending in this case to include all of those in the original complaint as well as those in the November 6, 2003, amended complaint.

8

he handcuffed and detained Mr. Johnson (DPFOF ¶ 2; Officer Johnson Aff. ¶ 2). As stated above, Mr. Johnson swears in his affidavit that Officer Johnson did not determine that a warrant for his arrest existed, but as Mr. Johnson has not shown personal knowledge regarding that statement, it is disregarded.

Mr. Johnson does not attack the validity of the Illinois warrant, nor does he assert that the person sought in the warrant was someone other than him. He merely maintains that the defendant officers had no warrant for his arrest. With the undisputed evidence establishing that there was a felony warrant for Mr. Johnson's arrest and that eh arrest warrant had come to Officer Johnson's attention, regardless of the officers' inability to find the warrant on his squad car computer, there was probably cause supporting Mr. Johnson's arrest on July 29, 2003.

B.    Unlawful Search Claim

Mr. Johnson argues in his brief opposing summary judgment that the officers unlawfully searched his home without a warrant when he was arrested. This claim was not sufficiently pled such that defendants were put on notice that Mr. Johnson was claiming an illegal search. The only allegations in the complaint about any search are that "[w]hile the plaintiff was handcuffed, the defendants began to search the plaintiff's body and house and found nothing illegal" (Compl. at 3) and that "[t]he defendant had no legal authority to come to the plaintiff's house, search the house and the plaintiff, and handcuff the plaintiff and place him under arrest" (*id.* at 2). The remainder of the initial complaint focuses on the claimed illegal arrest and false imprisonment. (*See id.* at 2-5.) In the paragraph in which Mr. Johnson asserts a Fourth Amendment violation, he points only to the lack of an arrest warrant, not the lack of a search warrant.

Further, notwithstanding Mr. Johnson's identification of such a claim in his brief opposing summary judgment, he nowhere provides any evidence supporting the claim. Incident to a lawful arrest, officers may search an arrestee and the area immediately surrounding him. *United States v. Mitchell*, 64 F.3d 1105, 1110 (7th Cir. 1995). The search must be contemporaneous with the arrest, conducted to prevent the seizure of a weapon or the destruction of evidence, and limited to an area within the arrestee's control. *Id.* Here, the undisputed facts show that the search was contemporaneous with the arrest and that part of the search was of Mr. Johnson's person, which was allowed incident to an arrest. Mr. Johnson fails to provide any evidence that the officers' search extended outside the area within his control or was conducted for reasons other than to prevent use of a weapon. No evidence regarding the scope or details of the search has been submitted at all.

Therefore, this claim must be dismissed.

C.  Inadequate Police Training and Policies Claim

Mr. Johnson claims that the City of Milwaukee Police Department failed to adequately train its police officers and the City's policies caused the deprivation of his constitutional rights by Officers Johnson and Jones. More specifically, he claims that the City failed to adequately train its officers in how to arrest a suspect legally and that the failure to train allowed Officers Johnson and Jones to enter Mr. Johnson's home without a warrant, search his person and home, handcuff him, and place him under arrest.

Local governments may be sued under § 1983 for allegedly unconstitutional injury caused by or implementing that government's policy, custom, or practice. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691-92 (1978). Obviously, there must be an

10

unconstitutional injury before the municipality can be held liable for having a policy that allows it.

As discussed above, Mr. Johnson's arrest was lawful, and he has failed to establish any unlawful search. The City cannot be liable for having a policy that allowed an unlawful arrest of Mr. Johnson or search of Mr. Johnson's home, when no such unlawful arrest or search occurred. Defendants' motion for summary judgment as to this claim will be granted.

D.     Unlawful Withholding of Documents Claim

In his amended complaint, Mr. Johnson asserts that on August 19, 2003, he went to the third district police headquarters, seeking the dispatch records from the date of his arrest. (Am. Compl. at 2.) However, Mr. Johnson was told that no such dispatch records existed. (*Id.* at 3.) Mr. Johnson asserts that the defendants concealed or destroyed these records to cover up the fact that they went to his house and arrested him without a warrant. (*Id.*)

Wisconsin's open-records law reads: "Except as otherwise provided by law, any requester has a right to inspect any record." Wis. Stat. § 19.35(1)(a). However, the appropriate remedial procedure for violations of this statute is an action for mandamus in state court. *See* Wis. Stat. § 19.37(1). Mr. Johnson cannot bring the mandamus action in this court.

Moreover, the defendants attack this claim in their summary judgment motion and Mr. Johnson failed to respond with any argument or evidence. The undisputed evidence shows that Officers Johnson and Jones were not sent to Mr. Johnson's house pursuant to any dispatch; they went to Mr. Johnson's house following the determination by Officer Johnson

11

that there was an open Illinois warranted for Mr. Johnson's arrest. The undisputed evidence also shows that Jones used a cell phone to contact a squad car in the district where Mr. Johnson resides rather than use a police dispatcher. Thus, there were no dispatch records to which Mr. Johnson was denied access. Therefore,

IT IS ORDERED that defendants' motion for summary judgment is granted and this case is dismissed.

Dated at Milwaukee, Wisconsin, this 31st day of August, 2006.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. District Judge